UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

DILBAR GUL DILBAR,

        Defendant.

25-mr-6065-FPG

AFFIRMATION IN OPPOSITION
TO MOTION FOR STAY
PENDING APPEAL

**ANNE M. BURGER,** affirms under penalty of perjury that:

I am an Assistant Federal Public Defender for the Western District of New York and was assigned to represent Dilbar Gul Dilbar. I make this affirmation based on my recollection of the detention hearing that took place on May 9, 2025, and May 13, 2025, and, unless a source is otherwise identified, upon information and belief. Yesterday, Magistrate Judge Holland denied the government's detention risk-of-flight-based detention motion and imposed the following comprehensive release conditions:

(1) The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2) The defendant must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C § 14135a.

(3) The defendant shall immediately advise the court, defense counsel, U.S. Attorney and the U.S Probation and Pretrial Services office in writing before any change in address and telephone number.

(4) The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed. The defendant shall appear at (if blank, to be notified)

_____U.S. District Court_____ on __June 12, 2025, at 10:00 AM__ and as directed thereafter.
      *Place*                                     *Date and Time*

(X) (5) The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

(✓) (7) The defendant is placed in the custody of:
    (Name of person or organization):    __David__

    (City and state): __Rochester, New York__    (Tel. No.) _____
who agrees (a) to supervise the defendant in accordance with all the conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or is no longer in the custodian's custody.

            Signed: _____        __5/13/2025__
                        *Custody*                          *Date*

(8) The defendant shall:
- (✓) Report to the Pretrial Services within 24 hours of release, telephone number (585) 263-6810, and as directed thereafter.
- (✓) (b) Execute a bond or an agreement to forfeit upon failing to appear as required the following sum of money or designated pr : **6,000 cash bond secured by cash**
- (✓) (g) Surrender any passport/passport card to: **the Clerk of the Court**[1]. Surrender other international travel documents to appropriate authorities (i.e. Enhanced Driver's License or NEXUS card). **and surrender his childrens' passports**.
- (✓) (h) Not obtain a passport or other international travel document (i.e. Enhanced Driver's L or NEXUS card).
- (✓) (i) Restrict travel to **Monroe County, NY**, unless court permission is granted to travel elsewhere.
- (✓) (j) Remain at a verifiable addre s as approved by Pretrial Services.
- (✓) (m) Submit to a mental health evaluation and/or treatment as approved by Pretrial Services. The defendant shall ontribute t the cost of ervices rendered in an amount to be determined by the probation officer based on ability to pay or availability of third party payments.
- (✓) (p) Refrain from possessing a firearm, destructive device, or other dangerous weapon.
- (✓) (q) Refrain from (✓) any ( ) excessive use of alcohol.
- (✓) (v) Refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing (r electronic monitoring) which is (are) required as a condition(s) of release.
- (✓) (w) Participate in one of the following location restriction programs and comply w its requirements as directed.
- (✓) (ii) **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or
- (✓) (x) Submit to the following location monitoring technology and comply with its requirements as directed:
  - (✓) (i) Location monitoring technology as directed by the pretrial services or supervising officer; or
- (✓) (y) Pay all or part of the cost of location monitoring based upon your ability to pay as determined by the pretrial services or supervising offi .
- (✓) (z) Report within 72 hours, to Pretrial Services any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic st
- (✓) (aa) **Provide pretrial services with all requested financial information n pretrial to review his finances.**

**(bb) Defendant shall ithdraw NYS security guard application**
**(cc) Defendant shall sign n irrevocable waiver of extradition.**

- (✓) (cc) The defendant shall participate in the comput nternet monitoring program administered by the U.S. Probation Office. The defendant must provide the U.S. Probation Office advanced notification of any computer(s), automated service(s), or connected device(s). The U.S. Probation Office is authorized to install any application as necessary on computer(s) or connected device(s) owned or operated. The defendant may be required to pay the cost of monitoring services at a monthly rate provided by the U.S. Probation Office. The U.S. Probation Office shall randomly monitor the defendant's computer(s), connected device(s), and/or storage media. The defendant shall consent to and cooperate with unannounced examinations of any computer equipment owned or used by the defendant, including but not limited to retrieval and copying of all data from the computer(s), connected device(s), storage media, and any internal or external peripherals, and may involve removal of such equipment for the purpose of conducting a more thorough inspection.

ECF No. 9.

Despite Magistrate Judge Holland's exacting conditions, the government seeks an order of this Court staying the May 13, 2025, Order of Magistrate Judge Holland releasing Dilbar on conditions ["Release Order"] until its appeal of the Order is resolved. ECF Nos. 10, 11.

Earlier today the government filed a motion seeking review of the release order and for a stay of Judge Holland's Release Order until the government's motion is resolved. ECF Nos. 10, 11.. Although the defense intends to respond to the government's motion seeking review of the release order more fully in a further filing this submission is offered in opposition to the government's request for a stay to keep Dilbar detained while it pursues an appeal of Judge Holland's Release Order.

As with its proffer to Magistrate Judge Holland, the government fails to provide a convincing justification for this Court to detain Dilbar pending appeal of Judge Holland's order releasing him.

**DISCUSSION**

In deciding a motion to stay, a court considers: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). In support of its request for the stay, the government lays out the substance of its detention hearing proffer, a proffer that was rejected by Judge Holland. For this reason, the government's request for a stay fails on likelihood of success alone. Beyond this, the government has failed to satisfy the remaining three *Nken* factors in support of the requested stay. Nor could it credibly argue that these factors are met here with Dilbar's detention pending determination of the government's appeal.

The government argues that it would be irreparably harmed if the Court denies its requested stay because he will likely flee and "deprive the government of any meaningful review

of the Magistrate Judge's decision and could lead to years of efforts to relocate the defendant." ECF No. 11. The government's claim that it would be irreparably harmed absent a stay is not convincing. Nor is their claim that they are likely to succeed in their challenge of Judge Holland's order imposing release conditions. The government would suffer no harm if Dilbar was released pending appeal.

Dilbar, his wife and five children have lived in the same home since they arrived in the United States in April of 2024. Dilbar, his wife and their oldest four children currently have legal permanent resident status while their youngest child, a newborn, is a U.S. Citizen. Although he has only been a member of our community since April of 2024, Dilbar has strong ties to the community in the form of his connection to two religious communities: The Islamic Center on Westfall Road and Grace Church. One of these communities, Grace Church, located at 805 Blossom Road in the City of Rochester is physically less than 500 feet from Dilbar's home at 785 Blossom Road.



The religious staff and congregants at Grace Church are well-familiar with Dilbar and his family. He consistently attends Sunday services in spite of working lengthy overnight shifts, he volunteers at church events and even helps with setting up and cleaning up afterwards. David Hough and his wife, parishioners at Grace Church have developed an exceedingly close friendship with Dilbar and his family and consider them to be part of their extended family, regarding Dilbar's children as their own grandchildren.

David, who has agreed to act as third-party custodian to ensure that Dilbar complies with his conditions of release, lives barely one mile away – also within the City of Rochester. David is a local professional who was educated as an engineer and attended college at RIT for Mechanical Engineering in the 1980s. Dilbar's other supports come from a wide array of professions ranging from two local attorneys to pastors at Grace Church, to a professionally trained architect and corporate officer of a local architecture firm.

As noted above, Dilbar has full-time employment and has worked in this job since last summer. His wife, a homemaker, is also striving to establish roots in our community. At present, she has her learner's permit and is hoping to earn her driver's license soon. The couple's oldest, school aged children, aged 6 and 7, attend Abraham Lincoln School in Rochester. Through thrift, Dilbar and his wife have managed to save a total of between 7 and 8 thousand dollars. Dilbar has pledged all of that money as bond to secure release conditions. Judge Holland, in her order imposing release conditions, directed that he pay the $6,000 presently in the family's savings account to secure the bond. In order to further ensure compliance with the release conditions – and with Dilbar's agreement – Judge Holland ordered that he provide full access to U.S. Pretrial over his financial records, monitoring of all of any connected devices, and, at the defense's suggestion, that he execute an irrevocable waiver of extradition as further proof of his commitment to abide by conditions of release.

Given the strict conditions imposed by Judge Holland, here is no real risk that Dilbar would fail to appear given he will be under the watchful eye of U.S. Pretrial and David Hough, in the role of third-party custodian. In comparison, Dilbar faces very real harm should his detention continue. Having never experienced detention previously, Dilbar is suffering acutely during his confinement. He is surrounded by individuals who have been deemed too dangerous to be released even under New York State's relaxed bail regime. He is also isolated from his wife and five children and has not been able to return to work given his detention. The government's request for a stay is thus not only unnecessary, but harmful to him.

Should the government's arguments be construed as a claim that the public interest weighs in favor of a stay this too is unpersuasive. Magistrate Judge Holland carefully inquired of the government whether it was seeking that Dilbar be detained based on concerns of danger; the government assured her it was not. Yet the government continues to suggest that there may be evidence of something danger-like. In its application for a stay, for example, the government points out that there is no way to know for certain that he doesn't have a "history of criminal conduct, violence, or association with violent organizations." ECF No. 11. Yet the government concedes that Dilbar worked in support of the United States and its allies during the war in Afghanistan (albeit not long enough to qualify for the "SIV" program). *Id*. Certainly, prior to being permitted to do so, Dilbar would have been subjected to some type of background investigation before being given this employment and this type of access. The following photographs, obtained by the defense in its preliminary investigation up to this point, are submitted to illustrate the access that Dilbar was given to U.S. and allied troops in Afghanistan.






Had Dilbar sustained criminal convictions, engaged in past violence or had violent associations in Afghanistan the government would have had access to this information and would have presented it at the detention hearing.

Judge Holland was satisfied that home detention with electronic and location monitoring, travel restriction, financial and device monitoring by U.S. pretrial along with the other conditions sufficiently alleviated any risk of flight. Judge Holland also relied on Dilbar's support in the community and David Hough as a third-party custodian.

The government's baseless claim that it won't be Dilbar but, instead, one of his community supporters, that coughs up the $6,000 in support of the bond ignores Judge Holland's oral pronouncement of the conditions and flies in the face of the law-abiding nature of the community members who support Dilbar and were present in court for him at each of his appearances. They all heard that Judge Holland directed that the money would come from Dilbar's own savings account. We also know it will because U.S. Pretrial will have full access to his financial records and will see the source of the funds. Nor would Mr. Hough – or any of the other community supporters of Dilbar and his family – seek to find a way to obstruct Judge Holland's order by paying the money themselves.

Given the government's low likelihood of success in its challenge to Judge Holland's release conditions, the substantial injury that would result to Dilbar should the Court grant the government's stay, and the absence of any public interest in keeping him in custody, there is no question that the government's request for a stay should be denied. Finally, even if the government were able to satisfy the four-pronged standard, the Court has broad discretion to deny the government's request for a stay, and it should exercise that discretion here. *See*

*Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926) ("A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant. It is an exercise of judicial discretion." (cleaned up)).

**CONCLUSION**

Judge Holland denied the government's motion for detention on the only basis raised by the government - risk of flight - and imposed strict conditions of release secured by Dilbar's own funds. The government's request for a stay until the determination of its appeal of Judge Holland's decision does not pass muster when squared with the standard in *Nken*. For all of these reasons the Court should deny the government's Motion to Stay.

DATED:     May 14, 2025
                Rochester, New York,

                                       Respectfully submitted,

                                       /s/ Anne M. Burger
                                       Anne M. Burger
                                       Assistant Federal Public Defender
                                       Federal Public Defender's Office
                                       28 E. Main Street, Suite 400
                                       Rochester, New York 14614
                                       (585) 263-6201, (585) 263-5871 (Fax)
                                       anne_burger@fd.org

TO:     Meghan K. McGuire
             Assistant United States Attorney

             Kristen Nenni
             U.S. Probation Officer