UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                          25-mr-6065-FPG

        v.

DILBAR GUL DILBAR,                                 RESPONSE IN OPPOSITION
                                               TO GOVERNMENT'S
                        Defendant.                        BAIL APPEAL
_____

      This response is submitted in opposition to the government's appeal of Magistrate Judge Holland's decision denying the government's detention motion and imposing release conditions. ECF No. 1 (25-mr-6065-FPG); ECF No. 9.[1] The factual claims made herein are based upon the record including docket entries and transcripts of the detention hearing of May 9, 2025, and May 13, 2025,[2] information gleaned from the defense's investigation, and a review of the discovery material disclosed by the government. Not having had a full opportunity to review and analyze the discovery provided up to this point, the defense will accept, as Magistrate Judge Holland did, the government's claims regarding the proof of the charged conduct. The transcripts from the detention hearing are being provided to the Court and the government under separate cover. The Pretrial Services Report ["Bail Report"] recommending that Mr. Dilbar be detained is available to the Court directly from U.S. Pretrial Services.

      On May 15, 2025, Mr. Dilbar was released on the conditions imposed by Magistrate Judge Holland pending the government's bail appeal. ECF Nos. 9, 15, 16.

---

[1] References to docket entries relate to the docket under case number 25-mj-04055-CDH unless otherwise specified.
[2] References to the detention hearing transcripts are "5/9/25 Tr. at _____" or "5/13/25 Tr. at ___".

**Background**

Dilbar Gul Dilbar ("Dilbar") is a 33-year-old married father of five who lives in Rochester with his wife and children.[3] He has no prior criminal history.[4] Born in Afghanistan, Dilbar worked as a translator and pharmacist.[5,6] The couple's children range in age from one month up to seven years old.[7] Dilbar, his wife and three eldest children are all citizens of Afghanistan; their one-year-old was born in Albania - as the family was *en route* to the United States - and the youngest, born roughly one month ago, was born in the United States.[8] Dilbar and his family have lived in Rochester at the same house since they arrived here roughly one year ago.[9] Dilbar and his family have become deeply connected with the Rochester community – including two religious communities where he worships and does volunteer work, the Islamic Center and Grace Church.[10] Dilbar's two oldest children attend school locally; his wife, a homemaker, has a learner's permit and is hoping to learn to drive.[11] Over the last year, Dilbar has been continuously employed - working an overnight shift so that he can be available to assist his wife in the care of their youngest children, do the family grocery shopping and shuttle the children to and from medical appointments during the day.[12]

Dilbar was arrested and appeared initially in federal court on May 1, 2025. ECF Nos. 4, 12. He is charged by criminal complaint with one count of violating Title 18 U.S.C. § 1546(a) as

---

[3] 5/9/25 Tr. at 9, 10, 11, 12, 18, 27, 28; Bail Report at 1-2.
[4] 5/9/25 Tr. at 28; 5/13/25 Tr. at 11; Bail Report at 3.
[5] 5/9/25 Tr. at 3-4, 10, 21; Bail Report at 2.
[6] In its proffer at the detention hearing, the government argued that Dilbar lied to a Rochester friend about working as a pharmacist in Afghanistan, pointing out that "[n]ot once did [Dilbar] ever mention being a pharmacist. It's a lie that he told someone here in Rochester who is only trying to help him." 5/9/25 Tr. at 10. The government has since agreed that Dilbar previously disclosed on one occasion that he was a pharmacist.
[7] 5/9/25 Tr. at 11-12; 5/13/25 Tr. at 12; Bail Report at 2.
[8] 5/9/25 Tr. at 23, 25; 5/13/25 Tr. at 12; Bail Report at 1-2.
[9] 5/9/25 Tr. at 7, 27; 5/13/25 Tr. at 8, 11; Bail Report at 1.
[10] 5/9/25 Tr. at 10, 27, 28; 5/13/25 Tr. at 11-12.
[11] 5/9/25 Tr. at 28; 5/13/25 Tr. at 12.
[12] 5/9/25 Tr. at 27-8; 5/13/25 Tr. at 11; Bail Report at 2.

having occurred on or about and between January of 2021 and April 4, 2024. ECF No. 1. Dilbar's conduct involved allegations that he knowingly submitted false and fraudulent documents in connection with his U.S. Special Immigrant Visa applications. *Id*. It was alleged that he also falsely attested that the documents were genuine although there was evidence that he had obtained them, likely for a fee, from entities associated with fraudulent documents. *Id*.

The government moved for Dilbar's detention and, at the detention hearing, it argued, pursuant to 18 U.S.C. § 3142(f)(2)(A) that he presented a serious risk of flight and should be detained.[13] The U.S. Probation Department also recommended that Dilbar be detained.[14] Following a detention hearing, Magistrate Judge Holland denied the government's detention motion and ordered "extremely stringent" release conditions, citing Dilbar's history and characteristics as "the most significant factor" in her analysis.[15] The government's appeal followed.

**Detention Hearing**

At the detention hearing, the government proffered that Dilbar should be detained due to the seriousness of visa fraud and his alleged conduct that resulted in him and his family receiving green cards to which the government maintained they were not entitled.[16] In addition to the allegations in the complaint, the government proffered that, after his arrival in the United States, Dilbar had had further communications with one of the individuals the government identified as a supplier of fraudulent documents, that they exchanged identification documentation and that Dilbar provided a payment to the individual.[17] The government alluded to additional criminal

---

[13] 5/9/25 Tr. at 3, 11-13.
[14] Bail Report at 4.
[15] 5/13/25 Tr. at 11-12, 13.
[16] 5/9/25 Tr. at 9, 10-1.
[17] 5/9/25 Tr. at 6, 8.

3

activity by Dilbar when it proffered that law enforcement, during its search of his home, found visas and identification belonging to other individuals who do not live in his home.[18] The government also commented on his application for licensing as a security guard, to concerns relating to "national security," "danger to the community" and "safety."[19][20] When Magistrate Judge Holland inquired of the government whether it took the position that Dilbar "poses a risk to the safety of the community or any other person" the government responded in the negative and confirmed that it was not asserting that claim but, instead, it was seeking Dilbar's detention based only on a risk of flight.[21]

Regarding Dilbar's history and characteristics, the government pointed out that he had only lived in the district for one year and, aside from his immediate family, all of his extended family members live in Afghanistan.[22] The government also argued that Dilbar should be detained because his strong interest in avoiding being deported to Afghanistan with his family might lead him to flee if he was facing deportation.[23]

The defense maintained that Magistrate Judge Holland should deny the government's detention motion and impose release conditions.[24] Dilbar and his family have become rooted in their local community as evidenced by a significant showing of support among those who attended the court proceedings before Magistrate Judge Holland; they included David Hough, a friend who agreed to act as third-party custodian.[25] Furthermore, law enforcement searched Dilbar's home and confiscated his passport and other identity documents along with those of his

---

[18] 5/9/25 Tr. at 8.
[19] 5/9/25 Tr. at 7-8, 12; Bail Report at 3.
[20] Dilbar has not received a security guard license. 5/13/25 Tr. at 3, 4.
[21] 5/9/25 Tr. at 12-3.
[22] 5/9/25 Tr. at 9.
[23] 5/9/25 Tr. at 10-11.
[24] 5/9/25 Tr. at 14.
[25] 5/9/25 Tr. at 18-19, 27, 28, 30.

family; accordingly, they lacked international travel documents.[26] Further, Dilbar and his family are not savvy world travelers. their only international travel – to the United States – was planned and booked for them by an organization that Dilbar has been reimbursing since his arrival.[27] After leaving Afghanistan, on their way to the United States Dilbar and his family had layovers in Dubai, Kuwait, Albania, and Germany.[28] Dilbar and his family were forced to stay longer - for six to seven months - in Albania, as his wife was pregnant and about to deliver their child.[29, 30]

Regarding the role a potential penalty might play in creating a risk of flight, the defense observed that, in a survey of other criminal cases in the district involving visa fraud, the vast majority of the defendants received time served sentences and, in several instances, the government either consented to their release on conditions or they were released following a detention hearing.[31] It also appeared that, if Dilbar was convicted of the charge, the sentencing guidelines would recommend he receive a minimal sentence of 0 to 6 months.[32]

In addition to other commonly-imposed conditions of release, the defense proposed release conditions that would restrict Dilbar's movements such as the requirement that he report to U.S. Pretrial as directed, restricting his travel to Monroe County, submitting to GPS location monitoring, permitting U.S. Pretrial to monitor his finances to enable them to detect purchases indicative of travel planning among other conditions.[33] The Defense also agreed to a condition whereby Dilbar would unequivocally waive his right to extradition, a condition imposed in

---

[26] 5/9/25 Tr. at 20; 5/13/25 Tr. at 15.
[27] 5/9/25 Tr. at 22.
[28] *Id*.
[29] 5/9/25 Tr. at 22-23.
[30] Albania was one of several countries that entered into an agreement with the Biden administration to temporarily host Afghani refugees who were being vetted for U.S. visas. *See* https://www.dw.com/en/albania-divided-over-hosting-us-bound-afghan-refugees/a-59039208 .
[31] 5/9/25 Tr. at 24.
[32] *Id*.
[33] 5/9/25 Tr. at 14, 17.

several other cases within the district.[34] In order to address the concern raised in the government's proffer, the defense also proposed a computer monitoring condition that would allow U.S. Pretrial to monitor Dilbar's communications and online activity.[35] Finally, the defense proposed that the release conditions be secured by funds – Dilbar and his family's life savings.[36]

On May 13, 2025, Magistrate Judge Holland denied the government's motion and imposed the following stringent conditions of release:

(1) The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2) The defendant must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C § 14135a.

(3) The defendant shall immediately advise the court, defense counsel, U.S. Attorney and the U.S Probation and Pretrial Services office in writing before any change in address and telephone number.

(4) The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed. The defendant shall appear at (if blank, to be notified) U.S. District Court on June 12, 2025, at 10:00 AM and as directed thereafter.

(X) (5) The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

(✓) (7) The defendant is placed in the custody of: (Name of person or organization): **vid**
(City and state): **Rochester, New York** (Tel. No.) _____
who agrees (a) to supervise the defendant in accordance with all the conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or is longer in the custodian's custody.

Signed: Custodian    Date: 5/13/2025

(8) The defendant shall:
(✓) (a) Report to the Pretrial Services within 24 hours of release, telephone number (585) 263-6810, and as directed thereafter.
(✓) (b) Execute a bond or an agreement to forfeit upon failing to appear as required the following sum of money or designated pr: **6,000 cash bond secured by cash**
(✓) (g) Surrender any passport/passport card to: **the Clerk of the Court**[1]. Surrender other international travel documents to appropriate authorities (i.e. Enhanced Driver's License or NEXUS card). **and surrender his childrens' passports**.
(✓) (h) Not obtain a passport or other international travel document (i.e. Enhanced Driver's L or NEXUS card).
(✓) (i) Restrict travel to **Monroe County, NY** unless court permission is granted to travel elsewhere.
(✓) (j) Remain at a verifiable address as approved by Pretrial Services.
(✓) (m) Submit to a mental health evaluation and/or treatment as approved by Pretrial Services. The defendant shall contribute to the cost of services rendered in an amount to be determined by the probation officer based on ability to pay or availability of third party payments.
(✓) (p) Refrain from possessing a firearm, destructive device, or other dangerous weapon.
(✓) (q) Refrain from (✓) any ( ) excessive use of alcohol.
(✓) (v) Refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing or electronic monitoring which is (are) required as a condition(s) of release.
(✓) (w) Participate in one of the following location restriction programs and comply with its requirements as directed.

---

[34] 5/9/25 Tr. at 15, 24.
[35] 5/9/25 Tr. at 17-18.
[36] 5/9/25 Tr. at 18.

6

( ✓ ) (ii) **Home Detention.** You are restricted to your residence at all times except for employment: education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or

( ✓ ) (x) Submit to the following location monitoring technology and comply with its requirements as directed:
   ( ✓ ) (i) Location monitoring technology as directed by the pretrial services or supervising officer; or

( ✓ ) (y) Pay all or part of the cost of location monitoring based upon your ability to pay as determined by the pretrial services or supervising offi

( ✓ ) (z) Report within 72 hours, to Pretrial Services any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic st

( ✓ ) (aa) Provide pretrial services with all requested financial information n 1 pretrial to review his finances.

(bb) Defendant shall withdraw NYS security guard application

(cc) Defendant shall sign n irrevocable waiver of extradition.

( ✓ ) (cc) The defendant shall participate in the comput    nternet monitoring program administered by the U.S. Probation Office. The defendant must provide the U.S. Probation Office advanced notification of any computer(s), automated service(s), or connected device(s). The U.S. Probation Office is authorized to install any application as necessary on computer(s) or connected device(s) owned or operated. The defendant may be required to pay the cost of monitoring services at a monthly rate provided by the U.S. Probation Office. The U.S. Probation Office shall randomly monitor the defendant's computer(s), connected device(s), and/or storage media. The defendant shall consent to and cooperate with unannounced examinations of any computer equipment owned or used by the defendant, including but not limited to retrieval and copying of all data from the computer(s), connected device(s), storage media, and any internal or external peripherals, and may involve removal of such equipment for the purpose of conducting a more thorough inspection.

ECF No. 9.

**Standard of Review**

Where, as here, the government seeks review of a Magistrate Judge's order imposing bail conditions, the reviewing court must render its own bail determination *de novo*. *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). As it faced in its previous detention motion, the government once again bears the burden to establish, by a preponderance of the evidence, that the defendant presents a serious risk of flight. *See United States v. Jackson*, 823 F.2d 4, 5 (2d Cir.1987).

**Federal Bail Considerations**

The Constitution makes clear that "[e]xcessive bail shall not be required." U.S. Const. Amend VIII. In keeping with the Constitutional bar on excessive bail, 18 U.S.C. § 3142(b) "requires the court to order the pre-trial release of a defendant on a personal recognizance bond 'unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *United*

7

*States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). The Supreme Court has likewise long recognized that "[t]he traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." *Stack v. Boyle*, 342 U.S. 1, 3 (1951).

"The Bail Reform Act limits the circumstances under which a district court may order pretrial detention." *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The government is barred from seeking detention in limited circumstances such as "when the charge is for certain enumerated crimes, 18 U.S.C. § 3142(f)(1) (crimes of violence, offenses for which the sentence is life imprisonment or death, serious drug offenses, or felonies committed by certain repeat offenders), or when there is a serious risk that the defendant will flee, or obstruct or attempt to obstruct justice. *Id*.; § 3142(f)(2)." *Friedman*, 837 F.2d at 49.

In the face of a government motion for detention under 18 U.S.C. § 3142(f), a court must undertake a two-step inquiry. Initially, it must determine whether the government has proven by a preponderance of the evidence that a defendant is charged with one of the enumerated crimes; is a serious risk of flight; or is a serious risk to obstruct justice. *See Friedman*, 837 F.2d at 49. If the government sustains that burden, the court must then assess whether the government can prove that there are no conditions of release that will reasonably assure the defendant's appearance in court and the safety of the community or any person. *Id*. The Bail Reform Act requires only reasonable assurances; not guarantees. *See* § 3142(f).

**Argument**

Dilbar's Release on Conditions is Required by the Bail Reform Act

Dilbar has no record of criminal arrests or convictions, he is gainfully employed and has established strong community ties to Rochester including those he has made with two religious

communities: the Islamic Center on Westfall Road and Grace Church, located less than 500 feet from his home. He, his wife and their five young children have lived in the same home since their arrival in the United States one year ago. He, his wife and oldest four children have legal permanent resident status and their youngest child, a newborn, is a U.S. Citizen. The couple's oldest children attend Abraham Lincoln School in Rochester and Dilbar's wife has her learner's permit and hopes to learn to drive.

The religious staff and congregants at Grace Church are well-familiar with Dilbar and his family as Dilbar regularly attends Sunday services along with volunteering at church events. David Hough, who has agreed to act as third-party custodian is also a parishioner at Grace Church along with his wife. David lives barely one mile from Dilbar and is a local professional who was educated as an engineer and attended college at RIT for mechanical engineering. David and his wife consider Dilbar and his family to be part of their extended family and regard Dilbar's children as their own grandchildren.

Through thrift, Dilbar and his wife have managed to save a small nest-egg. Judge Holland, in her order imposing release conditions, directed that Dilbar pay the $6,000 in the family's savings account to secure the bond, commenting that "[t]his constitutes the full amount in his savings account."[37] In order to further ensure compliance with the release conditions – and with Dilbar's agreement – Judge Holland ordered that he submit to home detention with electronic monitoring, restrict his travel to within Monroe County, provide full access to U.S. Pretrial over his financial records, monitoring of all of any connected devices, and, at the defense's suggestion, that he execute an irrevocable waiver of extradition as further proof of his commitment to abide by conditions of release. ECF No. 9. Judge Holland also ordered that he surrender all of his children's passports.

---

[37] 5/13/25 Tr. at 15.

In light of this information, Magistrate Judge Holland correctly concluded that the government's detention motion should be denied and that release conditions should be imposed, commenting

> [t]urning to the history and characteristics of the person. I find this to be the most significant factor in my analysis. Mr. Dilbar has no criminal history nor any history of failing to comply with court orders or appear for court. He has steady employment and has been with his employer for a year. Mr. Dilbar has lived in the Western District of New York for the last year and has developed ties to the community during that time. He and his family are involved with two different religious communities, attending services at both, and have forged personal relationships with the members thereof.[38]

The Magistrate Judge also found it significant that Dilbar faced a low sentencing guidelines range if he was found guilty.[39] In light of all of the factors, Magistrate Judge Holland correctly concluded that, "while Mr. Dilbar presents a serious risk of flight, that risk can be appropriately managed with conditions."[40]

**Conclusion**

For all of the above reasons along with those set forth in the prior proceedings of the case, on its *de novo* review, this Court should affirm Magistrate Judge Holland's decision denying the government's detention motion and imposing conditions of release.

DATED:     May 21, 2025
           Rochester, New York,

                                        Respectfully submitted,

                                        /s/ Anne M. Burger
                                        Anne M. Burger
                                        Assistant Federal Public Defender

---

[38] 5/13/25 Tr. at 11-12.
[39] 5/13/25 Tr. at 11, 13.
[40] 5/13/25 Tr. at 13.

                                              Federal Public Defender's Office
                                              28 E. Main Street, Suite 400
                                              Rochester, New York 14614
                                              (585) 263-6201
                                              anne_burger@fd.org

TO:    Meghan K. McGuire
         Assistant United States Attorney

11