# Federal Public Defender's Office
## Western District of New York

Marianne Mariano
**Federal Public Defender**
marianne_mariano@fd.org

Anne M. Burger
**Supervisory Asst. Federal Public Defender**
anne_burger@fd.org

28 East Main Street
First Federal Plaza, Suite 400
Rochester, New York 14614

585-263-6201
Fax: 585-263-5871

Buffalo Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
716-551-3341
716-551-3346-FAX

Reply to: Rochester

May 31, 2025

**VIA CM-ECF**
Hon. Frank P. Geraci
United States District Judge
United States Courthouse
100 State Street
Rochester, NY 14614

    Re:    *United States v. Dilbar*, 25-mr-6065-FPG

Dear Judge Geraci,

    Following the Court's decision on May 29, 2025, I respectfully request, pursuant to Federal Rules of Appellate Procedure 8 and 9(b), an order staying the Court's revocation of Magistrate Judge Holland's order imposing conditions of release for Mr. Dilbar and granting him release pending appeal.

    In deciding a motion to stay, a court considers: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). In support of this request for a stay, the defense maintains that, in determining the government's appeal of Magistrate Judge Holland's order imposing conditions of release, the Court committed legal errors both with respect to its receipt and crediting of unreliable information and its failure to apply the correct legal standard of a "serious risk" of flight for which "no condition or combination of conditions will reasonably assure the appearance of the person as required. . ."18 U.S.C. §§ 3142(e)(1), 3142(f)(2)(A). Should Mr. Dilbar continue to be detained, he will lose his employment and be unable to financially support his wife and five children and, accordingly, he will be irreparably injured. The issuance of a stay will not substantially injure the government or be contrary to the public interest as Mr. Dilbar was compliant with his release conditions during the two-week period of his release and any appeal could be expedited.

    Magistrate Judge Holland denied the government's risk-of-flight-based detention motion following a two-day detention hearing and imposed comprehensive release conditions that took

effect with Mr. Dilbar's release on May 15, 2025. 5/13/25 Tr. at 11-12, 13.[1] ECF No. 9.[2] Judge Holland recognized that the Bail Reform Act required her to analyze, in the context of the government's risk-of-flight detention motion, first whether Mr. Dilbar presented a "serious risk of flight," 5/13/25 Tr. at 4, 5, 6, 9, 13. She also understood that, even after finding that Mr. Dilbar presented a serious risk of flight, before detention was justified, the Bail Reform Act required that she find that the government had proven that "no condition or combination of conditions will reasonably assure the appearance [of Mr. Dilbar]." 5/13/25 Tr. at 4-5, 9, citing *United States v. Salerno*, 481 U.S. 739, 755 (1987), Judge Holland also pointed out that "[i]n our society, liberty is the norm and detention prior to trial or without trial is the carefully limited exception." 5/13/25 Tr. at 4. Rather than crediting innuendo, Judge Holland instead based her decision to impose release conditions on reliable and accurate information.

     The government sought this Court's review of Judge Holland's order imposing conditions of release and raised a series of new claims including that (1) Mr. Dilbar was "linked" to a foreign terrorist organization; (2) that, in 2011, his fingerprint was found on a note at a crime scene in Afghanistan and that the note contained a series of letters and numbers "possibly the coordinates of a planned terrorist attack" (  ); (3) that, contrary to the information previously previously presented to Judge Holland, Mr. Dilbar had a prior criminal history stemming from his arrest in Afghanistan for impersonating an Afghan National Police investigator; (4) that Mr. Dilbar had access to vast sums of money that would enable him to flee; and (5) following his arrest, he made repeated phone calls to two other individuals from Afghanistan rather than his wife and American friend – one of which had wired money to Afghanistan earlier in 2025 and had also traveled there. Dkt. 25-mr-6065-FPG, ECF No. 5.

     Rather than credit it, the Court should have excluded this information as unreliable and irrelevant to its determination of the government's motion. The government's claim that Mr. Dilbar was linked to a foreign terrorist organization was incredible as it was based on nothing more than a few FaceBook contacts with an individual who was running for and ultimately elected to legislative office in Mr. Dilbar's home region in Afghanistan in 2018. On Facebook, becoming "friends" with someone means you've established a connection on the platform, allowing you to see their public posts and interact with them. It does not inherently signify agreement with everything they say or believe.

     Similarly, the government's suggestion that Mr. Dilbar was involved in prior criminal activity in Afghanistan based on its claim that his fingerprint was found on a note at a 2011 crime scene was unreliable. The government asserted that the note contained "possibly the coordinates of a planned terrorist attack" that they "look like" military coordinates. Dkt. 25-mr-6065-FPG, ECF No.; 5/29/25 Tr. at 19. No additional information was offered by the government about the nature of the crime or what relevance, if any, the recovered note may have had to the crime. The government's innuendo regarding the note – as is the nature of innuendo - lacked proof of involvement in criminal activity.

---

[1] References to transcripts in the case are "5/9/25 Tr. at _____," "5/13/25 Tr. at ____", or "5/29/25 Tr. at ____." A copy of the May 29, 2025, transcript is being provided under separate cover.

[2] References to docket entries relate to the docket under case number 25-mj-04055-CDH unless otherwise specified.

The government's claim that Mr. Dilbar had been arrested for impersonating an Afghan National Police investigator was likewise of highly questionable reliability. On closer scrutiny, a report disclosed to the defense cited that, in spite of the claim that Mr. Dilbar was detained in 2011 "no additional reporting could be found that corroborates that information." Further, the government was unable to say whether Mr. Dilbar was ever even charged. Dkt. 25-mr-6065-FPG, ECF No. 5, 5/29/25 Tr. at 6.

The government's claim that Mr. Dilbar has access to large sums of money that would make it easy for him to flee was similarly without reliable foundation. Much was made of a Moneygram receipt involving an individual Mr. Dilbar knew from Afghanistan living in the United States– who sent a modest sum – just over $400 - to someone back in Afghanistan in early 2025. Dkt. 25-mr-6065-FPG, ECF No. 5, 5/29/25 Tr. at 5. The government also associated this individual with a photograph of cash taken in early 2025. *Id*. This individual's money and property belong to him – not Mr. Dilbar. Mr. Dilbar works 10 hour overnight shifts and has done for the past year. He and his family live modestly.

The government also insinuated that it was suspicious that Mr. Dilbar called two people from Afghanistan who are living in the United States multiple times after he was jailed while he did not call his wife for days. Dkt. 25-mr-6065-FPG, ECF No. 5. It seems that the government was hinting not that Mr. Dilbar doesn't care for his wife or that his marriage was a sham but, instead, that his contacts with other people from Afghanistan following his arrest was illicit or, at a minimum, highly suspicious. Any innuendo by the government that these calls were illicit is simply innuendo as it offered no information about the content of the recorded phone conversations despite apparently having access to the recordings. Dkt. 25-mr-6065-FPG, ECF No. 5, 6. Nor is it suspicious for an immigrant to befriend other immigrants from their birth country; this has been commonplace among immigrant groups regardless of their nation of origin.

Although courts have great discretion in how information is presented in the context of a detention hearing and risk of flight, a court "retains the responsibility for assessing the reliability and accuracy of the government's information." *United States v. Martir,* 782 F.2d 1141, 1145 (2d Cir. 1986). In fulfilling this obligation to carefully assess the reliability and accuracy of the information presented by the government here, the Court should have rejected as unreliable and irrelevant the 'new' information the government raised. If the government persisted in its claims, the Court could have demanded further information from the government that would provide additional context and enable it to more meaningfully assess the reliability of the information. Here, instead, the Court accepted the government's unreliable claims and relied on them to revoke Judge Holland's order imposing release conditions and detain Mr. Dilbar. 5/29/25 Tr. at 26, 28-9, 30-2.

In reaching its decision, the Court also deviated from the standard required by the Bail Reform Act relating to the government's burden of establishing that a defendant presents a "serious risk of flight" such that "no condition or combination of conditions will reasonably assure" the defendant's appearance. Instead, the Court repeatedly referenced a "risk of flight" and, with respect to the role of release conditions, that "there are no conditions, or set of conditions, that would guarantee the return of the defendant to court. . ." 5/29/25 Tr. at 2, 3, 25, 27, 30.

For all of the above reasons, the Court should issue an order staying the Court's revocation

of Magistrate Judge Holland's order imposing conditions of release for Mr. Dilbar and granting him release pending appeal.

                                        Respectfully submitted

                                        /s/Anne M. Burger
                                        Anne M. Burger
                                        Supervisory Asst. Federal Public Defender

cc:    Meghan McGuire, AUSA (via CM-ECF)